Good morning. My name is David Gerard for the appellant student. I'd like to save two minutes for rebuttal, please. I'm going to try and address just a few of the issues in this case, but the first thing I want to make clear is that this is not a case about whether a school district can emergency expel a student for criminal activity without prior notice or hearing. Clearly a school district has that discretion and should have that discretion. The primary issue, one of the primary issues in this case, is what happens after the school district itself investigates the matter and decides that there's no longer an emergency present, but it still wants to exclude the student for long term, and in this case indefinitely. The issue then becomes what does Goss v. Lopez, what do the cases of this court require, and what does due process require? And the cases are pretty clear, and they require that the student be given prior notice and an opportunity for hearing. I'm not sure that this student didn't have notice prior to the hearing that took place, but he didn't have a hearing before he was long term expelled. So you're suggesting he wasn't given the due opportunity to cross-examine? That was part of the, certainly one of the rights he was denied initially and at the hearing he was given. The brief synopsis of facts here, the sequence, the chronology if you will. I guess I'm wondering where, and we're back on waiver, but where was this issue put to the district court that he was given, not given due opportunity to cross-examine his accusers? I didn't find that in the district court opinion, so I wondered where, if it was argued there. Absolutely argued there. That was a primary issue in this case was whether or not the student, when he ultimately had a hearing before the district's designated hearing officer on November 16th, whether he had the right, was provided with the right to cross-examination. And the matter was argued in terms of Stone v. Prosser School District to the district court, the Black Students Coalition case from this court. All of that was directly put before the district court. The district court got around that by not addressing the issue of whether the student was provided with the opportunity to cross-examine at that formal hearing because the district court understood that that hearing took place after the student was non-emergency expelled. Instead, the district court said this meeting that the student had with the principal of the alternative school on, I believe, November 6th was the formal hearing and all the due process that he was entitled to before he was long-term expelled. That's the way the district court dealt with it. But these issues were absolutely presented to the district court, and I think if you look in the record at the briefs on summary judgment in the district court, you'll find that they were very much raised there. Can I ask you just a quick question about terminology? There was an informal hearing in October? There was no hearing in October. There was a meeting. With the mother? There was a meeting, I believe, on October 23rd. This incident allegedly took place on October 9th. The school district a couple weeks later got this note from somebody off campus. Then there was a meeting between the principal of Newport High School and the student and his mother about an incident where the student had been accused of spraying graffiti on, well, actually printing a profanity on a bathroom wall at the school. In the course of that meeting, which was not a hearing, it was a meeting to discuss that, the principal said, and this is all in the record, the principal said to the mom, you know, by the way, we got a report that your son was spotted smoking marijuana off campus, and the student said, I didn't have anything to do with it. It was not a hearing, it was a meeting. There was a meeting, I don't know whether we want to call it a hearing, a meeting on November 6th with the mother and district officials where at least she was told of his appeal rights? Now what happened is, and if you look at the original expulsion notice, it's, excuse me, Appellant's initial record excerpt says page 35. When the student was given the written notice of emergency expulsion, at the bottom of it it says, please contact the director of alternative programs, Estelle Collins, and gives a phone number. That was to set up a meeting with Estelle Collins to talk about things like, this is how you're going to get your homework, you cannot inform the student he cannot come on school property, inform the student that he had certain conditions to meet, get a job, you know, look into community college courses, and that he could reapply for admission at the school district's discretion in late January of 2008. When was the first formal hearing? November 16th, 2007, between the designated hearing officer, Glenn Haslinger, the school district. You'll notice on the next page... You've answered the question. I've got a follow-up. Okay. When was your client first given the redacted statement that appears at ER 34? That was given to the client, I believe, in... Before or after the November 16th hearing? I... It was before, wasn't it? I think it was before. I think it was before, but I'm trying to remember if it was with the initial expulsion papers, or if it was given at the November 6th meeting with Estelle Collins. So going into the November 16th hearing, your client and his mother knew the substance of the marijuana allegation? Yes. And although the name was redacted of the witness, when it allegedly occurred and a description, correct? Yes. And did they make use of that at the November 16th hearing? Your client... Well, they tried to, but what happened at the November 16th hearing was first all the personally identifying information was redacted, so they had no idea who the witnesses were, and this is in the record. The only witnesses that appeared at the November 16th hearing were the principal, Ms. Siegworth, of Newport High School, and Ms. Collins, the director of the alternative school, who then presented their version of what happened based solely upon what was in the note. How many tall, light-skinned African Americans with red-tipped dreadlocks were there at this high school? If there was more than one, I would be shocked, and the student does not say that he was not at this spot. The student regularly went there to smoke cigarettes. This student had not been involved in this particular incident, though, and so what happened was the two school administrators showed up, they discussed the contents of the note, and no witnesses were brought in. None of these folks who were at the dentist's office were brought in. They didn't even bring in the school resource officer, who was the person who'd gone to the dentist's office, apparently, to interview the witnesses, even though he was the Bellevue School District police officer who was in the school. They didn't even bring him in. Who was Mary Dennis? I believe Mary Dennis was an employee in the dental office, as best I know, but her name was also redacted from the note. I'm looking at ER 34. Her name's in there. It is in there, in that version of it, and I caught that later, too, but if you'll look at the declaration of TM, she notes that everything was redacted out of there, so the version of the note that you've got in the record is not the version that she was given. This is not the one she was provided? No, and she says in her declaration, which is in the record, that all the personally identifying information was taken out, so there's no way she could call the witnesses. I see I'm out of time almost, and I did want to address one particular issue, if I might, and that is this issue of did the student have a due process right, a property right, if you will, in the regulations? Right, given Loudermill. Well, it's not so much Loudermill as it is Wedges-Ledges, the other cases that come out of this circuit. Well, if, in fact, Wedges-Ledges, line of authority, does give a property interest, how is that right any different from the right to a free public education in Washington? It's a different property right. How is it any different from the right to a free public education? Well, you can have a property right and a free public education in Washington, which is one property right protected by due process, and then under the Ledges-Wedges line of cases, you can have a property right in those procedures that provide substantive restrictions on the discretionary decision making of a governmental entity. How would one measure the damages any different? Well, I don't know that you would measure damages any different. Well, then why should we worry? I think you should worry because the district court took the position that if any minimal level of due process was provided, then it could ignore the entire line of Wedges-Ledges cases, citing cases from five other different circuits but not addressing the Ledges-Wedges cases. Well, I understand that. But if the measure of damages is no different, what difference does it make? Well, I think there are two different causes of action. But if the damages are the same, we wouldn't have duplicative damages, certainly. Well, you could have damages for the denial of a constitutional right to your education, and you could have damages, you know, for the denial of your right to certain procedures. Let me ask you another question. If I were to agree, given Parks-Wedges-Ledges rather than Loudermail, that Washington state procedures created a protectable property interest,  when they didn't place any kind of substantive restriction on the decision-making discretion of the public entity. Here, and that's the distinction that's made in Wedges-Ledges, normally you would not have a right, a property right to any certain procedures, unless they reached that threshold where you had an expectation that these would be applied, number one, and, two, that they actually limited the discretion substantively of the decision, the governmental decision-maker, and that's exactly what happened in this case. That's what happened in Wedges-Ledges, and that's why it's different. The other distinction between Loudermail is in Loudermail the person was given a fair amount, it was a civil servant, a fair amount of due process up front before termination of employment. After termination of employment, the person got a full administrative hearing. The flaw in the district court's decision is that, number one, the student did not get as much due process up front, not unlike the Harney County or the Harney School District decision that Judge Godwin wrote in 1987, but also the post-termination due process provided to the student was deeply flawed in and of itself and did not provide due process. That's the difference between Loudermail. Thank you. Thank you. Good morning. Please support. My name is Jim Baker. I represent the Bellevue School District. This is a case that involves some competing interests. Certainly we don't want to expel or suspend students without notice and opportunity to be heard, but at the same time what we have is a drug problem in our schools, and these schools have a duty to keep drugs away from the schools and keep students from coming around the schools with drugs and disrupting the other students. This is a paramount concern for the school at all times to keep drugs out of the schools. This student had a previous drug situation. He had previously gotten a 10-day suspension for admittedly having marijuana around the school district, drug paraphernalia, and smoking it around the school district. This student also had six suspensions, short-term suspensions, in a short period between this occurrence. He had six of them between May 6th and October 6th. We're not a jury, so we have kind of a narrow legal question here. How did the state statutory process get overlooked in this case? Did the school district make any effort to follow its own regulations? Sure it did. It primarily was to have, first of all, a hearing on the record that was held with Mr. Hasslinger on November 16th. Strike that. That wasn't on the record. It was a DAC hearing. I was going to say, that isn't on there. Excuse me. I misspoke. So they had a complete hearing before Mr. Hasslinger, where they could have brought on all the witnesses they wanted, opportunity to be heard. How could they call a witness that they didn't know about? Well, they knew that there were witnesses from the dental office. All they had to do was ask that the dental office witnesses be produced. There's nothing in the record that they ever asked for the names or ever asked them to be produced. Had they done so, we probably would have produced them. In fact, I have little doubt that they would have produced them, if they would have asked to have these witnesses there. How about suspending him for more than, excluding him from school for more than 10 days while his appeal was pending? Well, because it was a drug offense, number one, he had an automatic 30 days for a second offense. So there was an automatic suspension, and then there was a termination made by Collins. And November 6th, when they asked him about it, and they wouldn't even discuss it. And so she converted it to an indefinite suspension or suspension. I don't know. That term, indefinite, is superfluous, I think. When did it become 55 days? Pardon me? When did it become 55 days? I haven't counted that up, Your Honor. We had the Christmas holidays in there, which changed. I may not understand this. My question may not have been clear. At some point, the suspension was indefinite, correct? On November 6th, they said, come back in January and we'll talk about you coming back to school. At some point, it became a 55-day suspension. When did that happen? Your Honor, I don't know that date. I know that we have, I think in the records, the school holiday dates. There was quite a few days for vacation. And also, I don't know that, Your Honor. Counsel, I ask counsel about the, if you will, right to a procedural scheme enacted by the Washington law as a second cause of action, if you will. Right. Do you believe that TT has a property interest subject to due process in the student discipline standards and procedures set forth in applicable state laws? No, I don't, Your Honor. You don't? No. Why? How do you read past parks and wedges, ledges and make that answer? I think that he has a property interest in a public education. Well, there's no question he has that. But as I understand, TT doesn't only allege that, but TT further alleges a property interest in student discipline standards and procedures set forth. That it's something that I also have to give him due process if that's violated. Well, I think that the answer to that is in Doe v. Mercer Island School District, where the Ninth Circuit held that the violation of the WACs, the administrative code, was not a violation of federal due process. And that's a case that does. How do you distinguish parks and wedges, ledges? Well, I don't know that I can do it in much more detail, Your Honor, than we put. In your brief? Huh? Then in your brief, that's the best you're going to do? I don't think I'm prepared to say any more than that today. I'd be happy to do a supplemental, Your Honor. Do you believe that the damages for a protectable property interest in state law procedures are any different than those for a free public education? Well, you'd first have to determine whether any violation made any difference. I think that if there's any error here in following the WACs, it's harmless error, in that there's still the full hearing on the violation, opportunity to be heard. And then, Your Honor, not only did they have the hearing, they got relief. In the second hearing, they changed it to a long-term suspension from an expulsion. And so that shows that they were trying their very best to follow their own procedures. I appreciate all this arguments you're giving, but you really didn't answer my question. That is, is there a difference in the measure of damages for a protectable property interest in state law procedures and the damages one might get for a free public education? I would think so, because if you— Yes, there is. Yes, I think there would be, because one could potentially activate Section 1983 damages, and I don't think that the violation of the WAC would be a civil rights violation, which would open 1983 in attorney fees. From what case would I get that rule? Well, the best I can do is just that Doar v. Mercer Island, the Ninth Circuit, found that— Oh, is your case? Yeah, that found that WAC's—a violation of WAC was not a violation of federal due process. All right. Any other questions? Thank you, Your Honor. Any other argument? No, Your Honor. Okay. Did he have some more time? He did not. Thank you very much. Thank you very much. We're going to take a five-minute break. This case, T.T. v. Bellevue School District, is submitted.
judges: Goodwin, Hawkins, Smith N. R.